# UNITED STATES DISTRICT COURT

### for the

Eastern District of California

**FILED**

APR 2 5 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

CKD

|  |  |
|---|---|
| In the Matter of the Search of<br><br>14 Electronic Devices, currently located at the<br>FBI Office 2001 Freedom Way, Roseville, CA | )<br>)<br>)<br>)<br>)<br>) |

Case No. **2: 1 9 - SW - 3 5 4**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENTS A1 - A14, attached hereto and incorporated by reference.**

located in the _____ **Eastern** _____ District of _____ **California** _____, there is now concealed *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1); | Distribution of a Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☒ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Aron Mann
Homeland Security Investigations
Drug Enforcement Administration Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: **4/25/2019**

*Judge's signature*

City and state: Sacramento, California

Kendall J. Newman, U.S. Magistrate Judge

*Printed name and title*

**Carolyn K. Delaney**
**U.S. Magistrate Judge**

## AFFIDAVIT

I, Aron Mann, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a special agent with Homeland Security Investigations ("HSI") and have been so
employed since June 2016.  As a requirement for employment as an HSI special agent, I
successfully completed the Criminal Investigator Training Program ("CITP") located at the
Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia.  At the conclusion of
CITP, I completed an additional Homeland Security Investigations Special Agent Training
Academy.  As part of the training at FLETC, I received extensive instruction in the areas of
immigration law, customs law, illegal narcotics, firearms, surveillance, and interview techniques.
As a special agent with HSI, I investigate, among other things, illegal narcotics trafficking and
cyber-crimes.  Moreover, as an HSI special agent, I am a "Federal Law Enforcement Officer,"
authorized to investigate violations of the laws of the United States and to execute search and
seizure warrants issued under the authority of the United States.

2.     I have conducted and participated in criminal investigations for violations of federal and
state laws including, but not limited to, narcotics trafficking, child exploitation, money
laundering, firearms, fraud, and other organized criminal activity.  I have prepared, executed, and
assisted in numerous search and arrest warrants.  I have also conducted and participated in
criminal and administrative interviews of witnesses and suspects.  I am familiar with the formal
methods of illegal narcotics investigations, including electronic surveillance, visual surveillance,
general questioning of witnesses, search warrants, confidential informants, the use of undercover
agents, and analysis of financial records.  I have participated in investigations of organizations
involved in the manufacture, distribution, and possession with intent to distribute controlled
substances.

## PURPOSE

3.     I submit this application and affidavit in support of a warrant authorizing the search of
the following devices, all described more fully on **Attachments A-1** through **A-14**:

      a.   a Google Pixel cell phone (*See* **Attachment A-1**)

      b.   an HP Spectre laptop (*See* **Attachment A-2**)

      c.   an HP Pavilion laptop (*See* **Attachment A-3**)

      d.   a Samsung tablet (*See* **Attachment A-4**)

      e.   two Apple iPads (*See* **Attachments A-5** and **A-6**)

      f.   a Fujitsu hard drive (*See* **Attachment A-7**)

1

g.  a Hitachi hard drive *(See* **Attachment A-8)**

h.  a Crucial hard drive *(See* **Attachment A-9)**

i.  a Black Samsung cell phone *(See* **Attachment A-10)**

j.  a Grey Samsung Galaxy S cell phone *(See* **Attachment A-11)**

k.  a Lenovo laptop *(See* **Attachment A-12)**

l.  a Toshiba external hard drive *(See* **Attachment A-13)**

m.  a MyBook Portable hard drive *(See* **Attachment A-14)**

4.     Collectively, this affidavit will refer to these electronic devices collectively as "THE ELECTRONIC STORAGE MEDIA."

5.     This application and affidavit seeks authority to search THE ELECTRONIC STORAGE MEDIA – and to seize any instrumentalities, fruits, and evidence contained therein – relating to violations of 21 U.S.C. § 841(a)(1) (Distribution of Controlled Substances) and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances), more fully described in **Attachment B**.

6.     The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports, and on my own investigation of this matter. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have only set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 21 U.S.C. § 841(a)(1) (Distribution of Controlled Substances) and 21 U.S.C. §§ 846, 841(a)(1) (Conspiracy to Distribute Controlled Substances) are located within THE ELECTRONIC STORAGE MEDIA.

## FACTS ESTABLISHING PROBABLE CAUSE

7.     In September 2018, I began investigating Carrie MARKIS for operating as the narcotics vendor "Farmacy41" on several dark web marketplaces beginning in or around November 2013 and continuing through about April 2016. Through my review of seized data from three dark web marketplaces, I estimated that MARKIS sold more than 20,000 opioid prescription pills, including oxycodone, hydrocodone, morphine, and hydromorphone. She also sold more than 100 fentanyl transdermal patches.

8.     On January 24, 2019, law enforcement officers executed search and arrest warrants at MARKIS's residence. *See* Dkt. # 2:19-cr-062 JAM. Agents arrested MARKIS. During their search of her home, investigators also found and seized crystal methamphetamine, opioid pills, $234,000 in U.S. Currency, over the equivalent of about $1.8 million in digital currency. Additionally, agents seized THE ELECTRONIC STORAGE MEDIA, more fully described in

2

**Attachments A-1** through **A-14**. Agents found no one else at MARKIS's residence and no evidence that any other person else lived there.

9.     During a post-Miranda interview, MARKIS admitted to operating the Farmacy41 dark web vendor account and to packaging and shipping oxycodone, hydrocodone, and fentanyl, among other controlled substances. MARKIS stated that she has been a near-daily methamphetamine user for the past 15 years and has not worked in her profession as a registered nurse since beginning the dark web operation in late 2013. MARKIS also stated that she is living off the digital currency proceeds earned from the sales.

## TECHNICAL TERMS

10.    Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b.   Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

3

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet

4

through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

11. Based on my training, experience, and research, I know that THE ELECTRONIC STORAGE MEDIA have capabilities that allow them to serve, variously, as wireless telephones, digitial cameras, portable media players, GPS navigation devices, PDAs, tablets, pagers, and as devices that access the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

12. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

13.   There is probable cause to believe that things that were once stored on the THE ELECTRONIC STORAGE MEDIA may still be stored there, for at least the following reasons:

    a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.   Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives-contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

14.   <u>Forensic evidence.</u>   As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how THE ELECTRONIC STORAGE MEDIA was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on THE ELECTRONIC STORAGE MEDIA because:

    a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a

6

file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15.  Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

16. _Manner of execution._ Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

17. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

18. Based on the foregoing, and consistent with Rule 41(e)(2)(B), when persons executing the warrant conclude that it would be impractical to review the media on-site, the warrant I am applying for would permit seizing or imaging storage media that reasonably appear to contain some or all of the evidence described in the warrant, thus permitting its later examination consistent with the warrant. The examination may require techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

//

//

//

//

//

//

## CONCLUSION

19.  Based upon the foregoing, there is probable cause to believe the described THE ELECTRONIC STORAGE MEDIA are evidence of, and contain evidence of, violations of 21 U.S.C. § 841(a)(1) (Distribution of Controlled Substances) and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances).

Aron Mann
Special Agent
Homeland Security Investigations

Approved as to form:

Amanda Beck
Assistant United States Attorney

Sworn and Subscribed to me on April _25_, 2019

Hon. Kendall J. Newman
United States Magistrate Judge
Eastern District of California

Carolyn K. Delaney
U.S. Magistrate Judge

9

## ATTACHMENT A-1

### *Description of the Item to be Searched*

A Google Pixel cell phone with IMEI 352693081270635.  This phone was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-2

### *Description of the Item to be Searched*

A silver HP Spectre laptop with S/N 5CD605108K.  This laptop was seized from the home of
Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-3

### *Description of the Item to be Searched*

A black HP Pavilion laptop with S/N CND9041Z9Y.  This laptop was seized from the home of Carrie MARKIS on January 24, 2019.

## **ATTACHMENT A-4**

### *Description of the Item to be Searched*

A white Samsung tablet with S/N RF2DA08ZJVH.  This tablet was seized from the home of Carrie MARKIS on January 24, 2019.

# ATTACHMENT A-5

## *Description of the Item to be Searched*

An Apple iPad with S/N DMPL61BVFCYG.  This iPad was seized from the home of Carrie
MARKIS on January 24, 2019.

14

## ATTACHMENT A-6

### *Description of the Item to be Searched*

An Apple iPad with S/N DMPVH9CRHP50.  This iPad was seized from the home of Carrie MARKIS on January 24, 2019.

15

## ATTACHMENT A-7

### *Description of the Item to be Searched*

A Fujitsu hard drive with S/N K617T8C3FYRH.  This hard drive was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-8

### *Description of the Item to be Searched*

A Hitachi hard drive with S/N 110125J25R0054G8441H.  This hard drive was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-9

### *Description of the Item to be Searched*

A Crucial hard drive with S/N 133409550F4A.  This hard drive was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-10

### *Description of the Item to be Searched*

A black T-Mobile Samsung cell phone. This cell phone was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-11

### *Description of the Item to be Searched*

A grey Samsung Galaxy S cell phone.  This cell phone was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-12

### *Description of the Item to be Searched*

An orange Lenovo laptop S/N YB01963475.  This laptop was seized from the home of Carrie MARKIS on January 24, 2019.

## **ATTACHMENT A-13**

### *Description of the Item to be Searched*

A Toshiba external hard drive with S/N 52UAPBFITSX3. This hard drive was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-14

### *Description of the Item to be Searched*

A Western Digital MyBook portable hard drive with S/N WCC4E0723766. This hard drive was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT B

### *List of Items to be Searched for and Seized*

All records on THE ELECTRONIC STORAGE MEDIA described in **Attachments A-1** through **A-14** that relate to violations of 21 U.S.C. §§ 846, 841(a)(1) or 21 U.S.C. § 841(a)(1) since about November 2013 and that involve Carrie MARKIS. These records include:

1.  Records of text messages, iMessages, telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, telephone numbers and objects related to narcotics trafficking, and photographs or videos related to narcotics trafficking and associates.

2.  Dark web marketplace passwords, keys, text files, encryption passphrases/codes, PGP keys, or other information needed to access dark web and hidden service websites or encrypted communication platforms.

3.  Any and all hidden services accounts or encrypted chat applications used in furtherance of the offenses described above, including, but not limited to, darknet market accounts, associated darknet forum accounts, Tor-based email accounts, and encrypted chat application handles and logins.

4.  Email or other electronic communications regarding the possession, transfer, or sale of narcotics or digital currency.

5.  Virtual currency in any format, including but not limited to wallets (digital and paper), seed words, usernames and passwords, public keys and private keys.

6.  Evidence and records relating to the accumulation of proceeds derived from illicit narcotics trafficking, including banking, wire transfer, and credit card records; evidence and records relating to the sales or purchase of any digital currency or prohibited item on the dark web.

7.  Passwords, encryption keys, seed words, and other access devices that may be necessary to access the digital device or other electronic storage media.

8.  Records and things evidencing the use of an Internet Protocol address to communicate with the Internet.

24

9. Records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses.

10. Any and all peer to peer (P2P) virtual currency trading platform accounts, with no legitimate or identified service provider to which legal process may be served, used in furtherance of the offenses described above, including, but not limited to, localbitcoins.com accounts or Bitcoin-OTC internet relay chat channel accounts.

11. Lists of customers and related identifying information.

12. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.

13. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

14. Any information recording Carrie MARKIS's schedule or travel from November 2013 to April 2016.

15. All bank records, checks, credit card bills, account information, and other financial records.

16. Any and all records or other items which are evidence of ownership or use of THE ELECTRONIC STORAGE MEDIA.

17. Records and things evidencing the use of an Internet Protocol address to communicate with the Internet.

18. Contextual information necessary to understand the evidence described in this Attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>14 Electronic Devices, currently located at the FBI<br>Office 2001 Freedom Way, Roseville, CA | )<br>)<br>)   Case No.<br>)      **2:** 1 9 - SW - 3 5 4      **CKD**<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENTS A1 – A14, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____5/9/2019_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐   for _____ days *(not to exceed 30)* ☐  until, the facts justifying, the later specific date of _____.

Date and time issued:   4/25/2019  2:56pm   _____
                                                                              *Judge's signature*

City and state:      Sacramento, California _____      Kendall J. Newman, U.S. Magistrate Judge
                                                                              *Printed name and title*

                                                                              **Carolyn K. Delaney**
                                                                              **U.S. Magistrate Judge**

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____        _____
Signature of Judge                                        Date

## ATTACHMENT A-1

### *Description of the Item to be Searched*

A Google Pixel cell phone with IMEI 352693081270635.  This phone was seized from the home of Carrie MARKIS on January 24, 2019.

## **ATTACHMENT A-2**

### *Description of the Item to be Searched*

A silver HP Spectre laptop with S/N 5CD605108K. This laptop was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-3

### *Description of the Item to be Searched*

A black HP Pavilion laptop with S/N CND9041Z9Y.  This laptop was seized from the home of Carrie MARKIS on January 24, 2019.

**ATTACHMENT A-4**

*Description of the Item to be Searched*

A white Samsung tablet with S/N RF2DA08ZJVH.  This tablet was seized from the home of Carrie MARKIS on January 24, 2019.

13

## ATTACHMENT A-5

### *Description of the Item to be Searched*

An Apple iPad with S/N DMPL61BVFCYG.  This iPad was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-6

### *Description of the Item to be Searched*

An Apple iPad with S/N DMPVH9CRHP50.  This iPad was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-7

### *Description of the Item to be Searched*

A Fujitsu hard drive with S/N K617T8C3FYRH.  This hard drive was seized from the home of Carrie MARKIS on January 24, 2019.

## **ATTACHMENT A-8**

### *Description of the Item to be Searched*

A Hitachi hard drive with S/N 110125J25R0054G8441H.  This hard drive was seized from the home of Carrie MARKIS on January 24, 2019.

17

## **ATTACHMENT A-9**

### *Description of the Item to be Searched*

A Crucial hard drive with S/N 133409550F4A.  This hard drive was seized from the home of
Carrie MARKIS on January 24, 2019.

18

## ATTACHMENT A-10

### *Description of the Item to be Searched*

A black T-Mobile Samsung cell phone.  This cell phone was seized from the home of Carrie
MARKIS on January 24, 2019.

**ATTACHMENT A-11**

*Description of the Item to be Searched*

A grey Samsung Galaxy S cell phone.  This cell phone was seized from the home of Carrie MARKIS on January 24, 2019.

## **ATTACHMENT A-12**

### *Description of the Item to be Searched*

An orange Lenovo laptop S/N YB01963475.  This laptop was seized from the home of Carrie MARKIS on January 24, 2019.

**ATTACHMENT A-13**

*Description of the Item to be Searched*

A Toshiba external hard drive with S/N 52UAPBFITSX3.  This hard drive was seized from the home of Carrie MARKIS on January 24, 2019.

## ATTACHMENT A-14

### *Description of the Item to be Searched*

A Western Digital MyBook portable hard drive with S/N WCC4E0723766.  This hard drive was seized from the home of Carrie MARKIS on January 24, 2019.

23

## ATTACHMENT B

### *List of Items to be Searched for and Seized*

All records on THE ELECTRONIC STORAGE MEDIA described in **Attachments A-1** through **A-14** that relate to violations of 21 U.S.C. §§ 846, 841(a)(1) or 21 U.S.C. § 841(a)(1) since about November 2013 and that involve Carrie MARKIS. These records include:

1. Records of text messages, iMessages, telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, telephone numbers and objects related to narcotics trafficking, and photographs or videos related to narcotics trafficking and associates.

2. Dark web marketplace passwords, keys, text files, encryption passphrases/codes, PGP keys, or other information needed to access dark web and hidden service websites or encrypted communication platforms.

3. Any and all hidden services accounts or encrypted chat applications used in furtherance of the offenses described above, including, but not limited to, darknet market accounts, associated darknet forum accounts, Tor-based email accounts, and encrypted chat application handles and logins.

4. Email or other electronic communications regarding the possession, transfer, or sale of narcotics or digital currency.

5. Virtual currency in any format, including but not limited to wallets (digital and paper), seed words, usernames and passwords, public keys and private keys.

6. Evidence and records relating to the accumulation of proceeds derived from illicit narcotics trafficking, including banking, wire transfer, and credit card records; evidence and records relating to the sales or purchase of any digital currency or prohibited item on the dark web.

7. Passwords, encryption keys, seed words, and other access devices that may be necessary to access the digital device or other electronic storage media.

8. Records and things evidencing the use of an Internet Protocol address to communicate with the Internet.

24

9.  Records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses.

10. Any and all peer to peer (P2P) virtual currency trading platform accounts, with no legitimate or identified service provider to which legal process may be served, used in furtherance of the offenses described above, including, but not limited to, localbitcoins.com accounts or Bitcoin-OTC internet relay chat channel accounts.

11. Lists of customers and related identifying information.

12. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.

13. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

14. Any information recording Carrie MARKIS's schedule or travel from November 2013 to April 2016.

15. All bank records, checks, credit card bills, account information, and other financial records.

16. Any and all records or other items which are evidence of ownership or use of THE ELECTRONIC STORAGE MEDIA.

17. Records and things evidencing the use of an Internet Protocol address to communicate with the Internet.

18. Contextual information necessary to understand the evidence described in this Attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.